| | |
|---|---|
| **COLE SCHOTZ P.C.**<br>Michael D. Sirota, Esq. (NJ Bar No. 014321986)<br>Warren A. Usatine, Esq. (NJ Bar No. 025881995)<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>(201) 489-3000<br>(201) 489-1536 Facsimile<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br><br>*Proposed Attorneys for Debtors and*<br>*Debtors in Possession* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Richard D. Anigian, Esq. (*pro hac vice* pending)<br>Charles M. Jones II, Esq. (*pro hac vice* pending)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>rick.anigian@haynesboone.com<br>charlie.jones@haynesboone.com<br><br>*Proposed Attorneys for Debtors and*<br>*Debtors in Possession* |

| | |
|---|---|
| In re:<br>BLOCKFI INC., *et al*.,<br><br>              Debtors.[1]<br><br>---<br><br>BLOCKFI INC., BLOCKFI LENDING LLC AND<br>BLOCKFI INTERNATIONAL LLC,<br><br>              Plaintiffs,<br><br>-against-<br><br>EMERGENT FIDELITY TECHNOLOGIES LTD.<br>AND ED&F MAN CAPITAL MARKETS, INC.,<br><br>              Defendants. | **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>Case No. 22-19361 (MBK)<br><br>(Joint Administration Requested)<br><br>Chapter 11<br><br>Adv. Pro. No. 22-01382 (MBK) |

**MEMORANDUM OF LAW IN SUPPORT OF DEBTORS' MOTION FOR
ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a), 542, AND 543 OF
THE BANKRUPTCY CODE (I) DIRECTING THE COLLATERAL BE
TRANSFERRED TO A NEUTRAL BROKER OR ESCROW UNDER THE
COURT'S SUPERVISION OR (II) ENJOINING THE DEFENDANTS FROM
TRANSFERRING OR USING THE COLLATERAL PENDING FINAL
<u>RESOLUTION OF THE TURNOVER CLAIMS</u>**

---

[1] The Debtors in these chapter 11 cases (the "<u>Debtors</u>"), along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A)); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

# Table of Contents

I.   PRELIMINARY STATEMENT .................................................................................................. 1

II.  JURISDICTION AND VENUE ................................................................................................. 2

III. SUMMARY OF THE ARGUMENT ........................................................................................ 2

IV.  FACTUAL BACKGROUND .................................................................................................... 3

  A. The Pledge Agreement and the Forbearance Agreement ...................................................... 3

  B. EDFM refused to transfer the Collateral to BlockFi after the event of default. ................... 4

  C. The Chapter 11 Cases ............................................................................................................ 5

  D. This Adversary Proceeding .................................................................................................... 6

V.   ARGUMENT ............................................................................................................................. 7

  A. The Collateral is property of the BlockFi bankruptcy estates ............................................... 9

  B. BlockFi is entitled to turnover of the Collateral or the value of the Collateral from the Defendants under section 542 of the Bankruptcy Code. ............................................................ 10

  C. Alternatively, BlockFi is entitled to turnover of the Collateral from EDFM under section 543 of the Bankruptcy Code. ...................................................................................................... 10

  D. The Court should enter an order (a) directing the Defendants to transfer the Collateral to a neutral broker or escrow under the Court's supervision or (b) alternatively, enjoining the transfer or use of the Collateral pending the resolution of the Adversary Proceeding. ............ 11

    1. The Debtors are Reasonably Likely to Reorganize. ......................................................... 12

    2. The Debtor Will be Irreparably Harmed Unless the Court Issues the Injunction. .......... 13

    3. The Balance of Harms Weighs Heavily in Favor of this Court's Issuing of the Preliminary Injunction. ............................................................................................................ 14

    4. The Public Interest Supports this Court's Issuing an Injunction. .................................... 14

VI.  CONCLUSION ........................................................................................................................ 14

# Table of Authorities

**Cases**

A.H. Robins Co. v. Piccinin,
  788 F.2d 994 (4th Cir. 1986) ................................................................................... 11

City of Chicago v. Fulton,
  141 S. Ct. 585 (2021) ....................................................................................... *passim*

In re DBMP, LLC,
  2021 WL 3552350, (Bankr. W.D.N.C. Aug. 10, 2021) ........................................... 13

In re Bestwall,
  606 B.R. 243 (Bankr. W.D.N.C. 2019) ................................................................... 13

In re G-I Holdings Inc.,
  420 B.R. 216 (Bankr. D.N.J. 2009) ........................................................................ 12

In re Integrated Health Servs., Inc.,
  281 B.R. 231 (D. Del. 2002) ................................................................................... 14

In re LTL Mgmt., LLC,
  638 B.R. 291 (Bankr. D.N.J. 2022) ........................................................................ 12

In re MF Global Inc.,
  531 B.R. 424 (Bankr. S.D.N.Y. 2015) .................................................................... 10

In re Nurses' Registry and Home Health Corp.,
  533 B.R. 590 (Bankr. E.D. Ky. 2015) ....................................................................... 8

In re Saxby's Coffee Worldwide, LLC,
  440 B.R. 369 (Bankr. E.D. Pa. 2009) ..................................................................... 14

In re The Vaughan Company, Realtors,
  2015 WL 4498748, (Bankr. D. N.M. July 23, 2015) ................................................ 9

In re Union Trust Phila., LLC,
  460 B.R. 644 (E.D. Pa. 2011) ................................................................................. 12

In re W.R. Grace & Co.,
  115 F. App'x 565 (3d Cir. 2004) ............................................................................. 13

LTL Mgmt., LLC v. San Diego Cty. Emps. Ret. Ass'n (In re LTL Mgmt., LLC),
  640 B.R. 322 (Bankr. D.N.J. 2022) ........................................................................ 13

Penn Terra Ltd. v. Dep't of Envt'l. Res., Com. of Pa.,
   733 F.2d 267 (3d Cir. 1984) .................................................................................................. 11

Stone v. White (In re Stone),
   1998 WL 1819081 (Bankr. D.C. Nov. 4, 1998) ....................................................................... 8

## Statutes

11 U.S.C. § 101 ............................................................................................................................. 11

11 U.S.C. § 105 ...................................................................................................................... *passim*

11 U.S.C. § 541 ............................................................................................................................... 9

11 U.S.C. § 542 ...................................................................................................................... *passim*

11 U.S.C. § 543 ...................................................................................................................... *passim*

28 U.S.C. § 157 ............................................................................................................................... 2

## Rules

Federal Rule of Bankruptcy Procedure 7008 ................................................................................. 2

## Other Authorities

H. Rep. No. 95-595 at 342, 1978 U.S. Code Cong. & Ad. News at 5963, 6298 .......................... 12

*In the matter of: Standing Order of Reference to Bankruptcy Court under Title 11,* Standing Order
   of Reference 12-1, dated September 18, 2012 ....................................................................... 2

S. Rep. No. 95-989 at 51, 1978 U.S. Code Cong. & Ad. News at 5787, 5837 ............................ 12

Plaintiffs BLOCKFI INC. ("BlockFi Inc."), BlockFi Lending LLC ("BlockFi Lending") and BlockFi International LLC ("BlockFi International" and together with BlockFi Inc. and BlockFi Lending, "BlockFi"), file this memorandum of law in support of the *Debtors' Motion for Entry of an Order Pursuant to Sections 105(a), 542, and 543 of the Bankruptcy Code (I) Directing the Collateral be Transferred to a Neutral Broker or Escrow under the Court's Supervision or (II) Enjoining the Defendants from Transferring or Using the Collateral Pending Final Resolution of the Turnover Claims* (the "Motion") for an order either (a) directing Emergent Fidelity Technologies LTD. ("Emergent") and ED&F Man Capital Markets Inc. ("EDFM" and together with Emergent, the "Defendants") to transfer the collateral to a neutral broker or escrow under the Court's supervision or (b) alternatively, enjoining the transfer or use of the collateral pending resolution of the Adversary Proceeding and respectfully states as follows:

## I. PRELIMINARY STATEMENT[1]

1. BlockFi seeks to recover certain Collateral which is property of the BlockFi bankruptcy estates and was pledged to secure Emergent's obligations to BlockFi (the "Collateral"). Emergent has defaulted on its obligations under the Pledge Agreement and has failed to satisfy its obligations thereunder despite written notice of default and acceleration. EDFM, as the custodial agent under the Pledge Agreement, has custody of the Collateral. BlockFi demanded that EDFM transfer the Collateral to BlockFi prior to the filing of the above-captioned chapter 11 cases (the "Chapter 11 Cases"). EDFM has, as of the filing of the Motion, failed and refused to do so. BlockFi filed the above-captioned adversary proceeding (this "Adversary Proceeding") seeking, among other things, an order compelling the Defendants to turn over the Collateral pursuant to

---

[1] Capitalized terms used but not immediately defined shall have the meanings ascribed to them below.

sections 105(a), 542, and 543 of title 11 of the United States Code (the "Bankruptcy Code") and the Pledge Agreement.

2. While BlockFi seeks turnover in the Adversary Proceeding, BlockFi only seeks preliminary relief here to preserve the Collateral pending final resolution of this Adversary Proceeding. Specifically, BlockFi seeks an order (a) directing the Defendants to transfer the Collateral to a neutral broker or escrow under the Court's supervision or (b) alternatively, enjoining the transfer or use of the Collateral pending the Court's resolution of the Adversary Proceeding.

## II.     JURISDICTION AND VENUE

3. This Court has jurisdiction over this adversary proceeding and the Motion pursuant 28 U.S.C. § 1334 and *In the matter of: Standing Order of Reference to Bankruptcy Court under Title 11,* Standing Order of Reference 12-1, dated September 18, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, BlockFi consents to the entry of final orders or a final judgment by this Court in this adversary proceeding. Venue is proper before this court before pursuant to 28 U. S. C. §§ 1391(3)(c), 1408 and 1409.

4. The statutory predicates for the relief requested herein are sections 105(a), 542, and 543 of the Bankruptcy Code.

## III.     SUMMARY OF THE ARGUMENT

5. BlockFi is entitled to use and possession of the Collateral under the Pledge Agreement because Emergent defaulted on its obligations thereunder and failed to cure the default. Yet EDFM—Emergent's broker who has possession, custody, and/or control of the Collateral—has refused to deliver the Collateral to BlockFi. Thus, BlockFi has no option but to seek the relief requested in the Motion.

6. The Collateral is property of the BlockFi bankruptcy estates and is valuable and beneficial to the BlockFi bankruptcy estates. EDFM, therefore, should turn over the Collateral to BlockFi pursuant to section 542 of the Bankruptcy Code.[2] Emergent is also required to deliver the Collateral because its obligations under the Pledge Agreement are presently due and payable.

7. Alternatively, EDFM is required to turn over the Collateral to BlockFi pursuant to section 543 of the Bankruptcy Code to the extent it is a custodian of the Collateral.

8. Section 105(a) of the Bankruptcy Code provides authority for this Court to enter an order (a) directing the Defendants to transfer the Collateral to a neutral broker or escrow under the Court's supervision or (b) alternatively, enjoining the transfer or use of the Collateral pending the resolution of the Adversary Proceeding. Accordingly, BlockFi seeks such an order by the Motion.

## IV. FACTUAL BACKGROUND

### A. *The Pledge Agreement and the Forbearance Agreement.*

9. BlockFi entered into a pledge agreement with Emergent as of November 9, 2022 (the "Pledge Agreement"). The Pledge Agreement was given in consideration for BlockFi Lending and BlockFi International entering into an Amendment & Forbearance Agreement also dated November 9, 2022 (the "Forbearance Agreement").

10. Under the Forbearance Agreement, BlockFi Lending and BlockFi International agreed to forbear from exercising certain rights and remedies then available to them under various loan documents as a result of multiple events of default. BlockFi Lending and BlockFi International also agreed to extend certain payment obligations, provided the borrower complied

---

[2] BlockFi believes all of the Collateral is currently in the possession, custody, and/or control of EDFM. Accordingly, BlockFi focuses on EDFM's requirement to turn over the Collateral. However, EDFM has not confirmed the full value or amount of the Collateral under its control. If, in fact, Emergent retains some control over the Collateral, BlockFi seeks similar relief for Emergent to turn over the Collateral to BlockFi.

with its obligations under the Forbearance Agreement, including making timely payments in accordance with a payment schedule described therein.

11. Emergent acknowledged it would receive a direct or indirect benefit from BlockFi entering into the Forbearance Agreement.

12. Under the Pledge Agreement, Emergent absolutely, unconditionally, and irrevocably guaranteed the payment obligations of the borrower under the Forbearance Agreement. Emergent's guaranty was secured by a first priority security interest—in favor of BlockFi—in all of Emergent's rights, titles, and interests in, among other things, the Collateral which includes certain shares of common stock. The Collateral has value to the BlockFi bankruptcy estates.

13. Emergent was required to deliver all Collateral to BlockFi Inc. pursuant to the terms of the Pledge Agreement.

### B. EDFM refused to transfer the Collateral to BlockFi after the event of default.

14. Emergent breached the Pledge Agreement by, among other things, failing to satisfy its payment obligations and to promptly deliver the Collateral to BlockFi Inc. BlockFi Inc. has otherwise perfected its security interest in the Collateral through the filing of a UCC-1 Financing Statement.

15. On November 10, 2022, BlockFi Lending and BlockFi International notified Emergent that the forbearance period had ended due to an event of default, including borrower's failure to timely make a required payment in accordance with the payment schedule, and that all obligations were immediately due and payable. *See* **Exhibit A-1**. As a result of the event of default, Emergent was notified that all obligations under the Pledge Agreement were immediately due and payable and that BlockFi Lending and BlockFi International intended to exercise all

remedies available to them under the Pledge Agreement, including the sale of all or any part of the Collateral.

16. In the Pledge Agreement, Emergent granted BlockFi a power of attorney to act as its true and lawful attorney-in-fact with full and irrevocable power and authority in Emergent's name or in its own name, to take after an event of default, any and all action and to execute any and all documents and instruments which BlockFi deems necessary or desirable to accomplish the purposes of the Pledge Agreement.

17. EDFM—Emergent's broker who is designated as the custodial entity under the Pledge Agreement—holds the Collateral in a specified numbered account. Following the event of default, BlockFi sought to have the Collateral transferred to it, but EDFM has refused to transfer the Collateral to BlockFi.

18. Specifically, on November 14, 2022, BlockFi sent EDFM a letter demanding it deliver the Collateral to BlockFi as required under the Pledge Agreement. A true and correct copy of BlockFi's November 14 letter is attached hereto as **Exhibit B-1**. EDFM responded the same day, rejecting BlockFi's demand. A true and correct a copy of EDFM's November 14 letter is attached hereto as **Exhibit B-2**. After discussions between counsel for BlockFi and EDFM, EDFM further responded via email indicating it would retain possession of the Collateral pending an order from a court with jurisdiction over the Collateral, a true and correct copy of which is attached hereto as **Exhibit B-3**.

### C. The Chapter 11 Cases.

19. On November 28, 2022 (the "Petition Date"), BlockFi and its debtor affiliates as debtors and debtors-in-possession (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code thereby commencing the Chapter 11 Cases. The

5

Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

20.     The Debtors filed, among others, the *Debtors' Motion Seeking Entry of an Order (I) Restating and Enforcing the Worldwide Automatic Stay, Anti-Discrimination Provisions, and Ipso Facto Protections of the Bankruptcy Code, (II) Approving the Form and Manner of Notice, and (III) Granting Related Relief* (the "Worldwide Stay Motion").

21.     An official committee of unsecured creditors has not yet been appointed in these Chapter 11 Cases. No trustee or examiner has been requested or appointed in these Chapter 11 Cases.

22.     A detailed description of the Debtors and their businesses, and the facts and circumstances regarding the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Mark Renzi in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which was filed on the Petition Date and is incorporated by reference herein. As described in more detail in the First Day Declaration, the Debtors have initiated these Chapter 11 Cases to provide BlockFi with the opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders. The First Day Declaration is attached hereto as **Exhibit C**.

23.     The Defendants have been or will be served with notice of the Chapter 11 Cases.

### D. This Adversary Proceeding.

24.     On the Petition Date, BlockFi filed the *Debtors' Adversary Complaint Against Emergent Fidelity Technologies LTD. and ED&F Man Capital Markets, Inc.*, thereby initiating the Adversary Proceeding.

6

## V. ARGUMENT

25. Pursuant to section 105 of the Bankruptcy Code, BlockFi respectfully requests an order of this Court (a) directing the Defendants to transfer the Collateral to a neutral broker or escrow under the Court's supervision or (b) alternatively, enjoining the transfer or use of the Collateral pending the resolution of this Adversary Proceeding. As the holder of the first priority security interest in the Collateral, which is property of the BlockFi bankruptcy estates, BlockFi is entitled to have all such Collateral immediately surrendered to it and/or liquidated in whatever manner necessary to preserve as much value as possible with the proceeds from any and all such sales transferred to BlockFi. While the Debtors believe that the Defendants should not transfer the Collateral to any person other than BlockFi because of the automatic stay (including any order that the Court enters on the Worldwide Stay Motion), BlockFi files the Motion for specific relief with respect to the Defendants and the Collateral. Moreover, while merely holding the Collateral may not be a violation of the automatic stay,[3] the Defendants may take actions that would unquestionably violate the automatic stay,[4] which would then require BlockFi to seek immediate relief from this Court after the fact.[5] There is no reason for the BlockFi estates to bear such risk particularly here, where turnover is appropriate.

---

[3] *See City of Chicago v. Fulton*, 141 S. Ct. 585, 590 (2021) (holding that section 362(a)(3) of the Bankruptcy Code "prohibits **affirmative acts** that would **disturb the status quo of estate property** as of the time when the bankruptcy petition was filed").

[4] *See Fulton*, 141 S. Ct. at 592 (explaining that the Supreme Court "has not decided whether and when § 362(a)'s other provisions may require a creditor to return a debtor's property") (Sotomayor, J., concurring).

[5] BlockFi reserves all rights relative to any actions that the Defendants take or may have taken that would constitute a violation of the automatic stay and nothing herein waives or shall be deemed to waive any of BlockFi's rights related thereto.

7

26. There can be no serious dispute that BlockFi is entitled to the Collateral pursuant to the Pledge Agreement. Even if there was a dispute over title to the Collateral, courts have held that such dispute is not fatal to a turnover claim. *See, e.g.*, *In re Nurses' Registry and Home Health Corp.*, 533 B.R. 590, 597–598, (Bankr. E.D. Ky. 2015) (holding that a cause of action for turnover remains even if title is disputed and needs to be determined as part of the litigation and referring to other supporting authorities not cited as "too numerous to mention") (citations omitted).

27. Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). If that section means anything, it permits bankruptcy courts to enter orders ensuring that estate-owned collateral is protected and not dissipated during the course of a debtor's bankruptcy case. Based upon the foregoing, the Court has the authority to enter an order (a) directing the Defendants to transfer the Collateral to a neutral broker or escrow under the Court's supervision or (b) alternatively, enjoining the transfer or use of the Collateral pending the resolution of this Adversary Proceeding.

28. To the extent the Motion is construed as seeking turnover from the Defendants to a neutral broker or escrow, the Court can grant the turnover relief sought herein despite it being sought in a motion instead of a full lawsuit. *See, e.g.*, *Fulton*, 141 S. Ct. at 594 (recognizing that some "courts will permit debtors to seek turnover by simple motion, in lieu of filing a full adversary proceeding, at least where the creditor has received adequate notice"); *Stone v. White (In re Stone)*, No. 92-01383, 97-0034, 1998 WL 1819081, at *4 (Bankr. D.C. Nov. 4, 1998) (addressing writs of possession issued to enforce turnover pursuant to 11 U.S.C. § 105). In fact, this Court's website includes instructions for filing motions for turnover of property in **both** the main bankruptcy case

*and* an adversary proceeding.[6]  Moreover, BlockFi filed the Motion in the Adversary Proceeding and, at a minimum, this Court may expedite the turnover proceeding "or order preliminary relief requiring temporary turnover." *Id.* (citations omitted).

### A. *The Collateral is property of the BlockFi bankruptcy estates.*

29.    To be subject to turnover under section 542 of the Bankruptcy Code, the property must be property that the debtor may use, lease or sell under section 363, which generally means that it is property of the estate under section 541 of the Bankruptcy Code.  11 U.S.C. § 542 (a); *see also, e.g.*, *In re The Vaughan Company, Realtors*, No. 11-10-10759 JA, Adv. No. 13-1030 J, 2015 WL 4498748, *3 (Bankr. D. N.M. July 23, 2015) (denying claim under section 542 because the property was not property of the bankruptcy estate).  Likewise, property must be "property of the debtor, proceeds, product, offspring, rents, or profits of such property or property of the estate" for turnover under section 543 of the Bankruptcy Code.  11 U.S.C. § 543(a).  A debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of commencement of the case." 11 U.S.C. § 541(a)(1).

30.    Here, the Pledge Agreement is a valid and enforceable contract.  Emergent failed to satisfy its obligations under the Pledge Agreement and BlockFi is therefore entitled to all or as much of the Collateral as is required to satisfy Emergent's obligations thereunder.  As a result, the Collateral is property of the BlockFi bankruptcy estates because BlockFi had superior rights to the Collateral as of the Petition Date.  11 U.S.C. § 541(a)(1).  Accordingly, the Collateral is property that is subject to turnover under sections 542 and 543 of the Bankruptcy Code.

---

[6] *See* http://www.njb.uscourts.gov/content/motion-turnover-property-0 (instructions for filing "Motion for Turnover of Property" in the main bankruptcy case); https://www.njb.uscourts.gov/content/motion-turnover-property (instructions for filing "Motion for Turnover of Property" in an adversary proceeding).

### B. BlockFi is entitled to turnover of the Collateral or the value of the Collateral from the Defendants under section 542 of the Bankruptcy Code.

31. The Defendants should "deliver to [BlockFi], and account for, [the Collateral] or the value of [the Collateral]" because the Defendants are not custodians, are in possession, custody or control of the Collateral "during the case," and the Collateral has value to the BlockFi bankruptcy estates. 11 U.S.C. § 542(a); *see, e.g.*, *Fulton*, 141 S. Ct. at 594 ("At least one bankruptcy court has held that § 542(a)'s turnover obligation is automatic even absent a court order.") (citing *In re Larimer*, 27 B.R. 514, 516 (Bankr. D. Idaho 1983)) (Sotomayor, J., concurring). Similarly, Emergent "owes a debt that is property of the estate and that is matured"[7] as a primary obligor, therefore, it must "pay such debt to [BlockFi]," which requires, among other things, EDFM and/or Emergent to transfer the Collateral to BlockFi. 11 U.S.C. § 542(b). Alternatively, the Defendants must tender the value of the Collateral to BlockFi. 11 U.S.C. § 542(a).

### C. Alternatively, BlockFi is entitled to turnover of the Collateral from EDFM under section 543 of the Bankruptcy Code.

32. Section 543 of the Bankruptcy Code is the parallel turnover statute and applies only to custodians whereas section 542 of the Bankruptcy Code does not apply to custodians. Accordingly, to the extent the Court determines that EDFM is a "custodian" as defined in the Bankruptcy Code and that section 542 does not apply to it, BlockFi is entitled to turnover of the Collateral from EDFM pursuant to section 543 of the Bankruptcy Code.

---

[7] Matured debt does not need to be evidenced by a promissory note to be subject to turnover under section 542(b) of the Bankruptcy Code. *See, e.g.*, *In re MF Global Inc.*, 531 B.R. 424, 426–27, 431–38 (Bankr. S.D.N.Y. 2015) (finding in the context of a claim objection that the debtor's customer was unconditionally liable to the debtor for the balance of his account, which was a matured debt under section 542(b) of the Bankruptcy Code, therefore, the trustee had made a *prima facie* showing that the amounts the debtor liquidated from the customer's investment trading account were subject to turnover under the terms of the customer agreement).

33. "Custodian" is defined in pertinent part as an "agent . . . under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors." 11 U.S.C. § 101(11). EDFM is referred to as the "Banking or Custodial Entity" in the Pledge Agreement and holds the Collateral in a specified numbered account. Accordingly, EDFM may be a custodian for purposes of turnover claims under the Bankruptcy Code.

34. If EDFM is a custodian for purposes of turnover claims under the Bankruptcy Code, it is prohibited from taking any actions with respect to the Collateral except as may be "necessary to preserve such property" once it is notified of the Chapter 11 Cases. 11 U.S.C. § 543(a). As such, EDFM would not be prejudiced by an order requested in the Motion.

35. EDFM is also obligated to deliver the Collateral to BlockFi if it is a custodian for purposes of turnover claims under the Bankruptcy Code. 11 U.S.C. § 543(b). Accordingly, to the extent EDFM is a custodian for purposes of turnover claims under the Bankruptcy Code, BlockFi is entitled to turnover of the Collateral pursuant to section 543 of the Bankruptcy Code.

> ### D. The Court should enter an order (a) directing the Defendants to transfer the Collateral to a neutral broker or escrow under the Court's supervision or (b) alternatively, enjoining the transfer or use of the Collateral pending the resolution of the Adversary Proceeding.

36. Section 105(a) of the Bankruptcy Code empowers the Court to enjoin parties from taking action that interferes or threatens to interfere with the rehabilitative process of chapter 11. *See, e.g.*, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002–03 (4th Cir. 1986) (quotations and citations omitted) (discussing multiple grounds for a bankruptcy court to enjoin an entity from taking actions or continuing to act). "The bankruptcy court, in its discretion, may issue an appropriate injunction, even if the automatic stay is not operative." *Penn Terra Ltd. v. Dep't of*

11

*Envt'l. Res., Com. of Pa.*, 733 F.2d 267, 273 (3d Cir. 1984) (citing 11 U.S.C. § 105); *see also, e.g.*, S. Rep. No. 95-989 at 51, 1978 U.S. Code Cong. & Ad. News at 5787, 5837; H. Rep. No. 95-595 at 342, 1978 U.S. Code Cong. & Ad. News at 5963, 6298 ("The court has ample other powers to stay actions not covered by the automatic stay.").

37. In determining whether to grant preliminary injunctive relief under section 105(a), courts in the Third Circuit generally apply the traditional four-factor test for a preliminary injunction, tailored to the bankruptcy context. *See, e.g.*, *In re Union Trust Phila., LLC*, 460 B.R. 644, 660 (E.D. Pa. 2011). Those four factors are: (1) the debtor's reasonable likelihood of a successful reorganization; (2) the imminent risk of irreparable harm to the debtor's estate in the absence of an injunction; (3) the balance of harms between debtor and the nonmoving party; and (4) whether the public interest weighs in favor of an injunction. *Id.* Here, the preliminary injunction factors all support enjoining the transfer of the Collateral to anyone other than BlockFi or a neutral broker or escrow under the Court's supervision.

   1. *The Debtors are Reasonably Likely to Reorganize.*

38. In the bankruptcy context, reasonable likelihood of success is equivalent to the debtor's ability to successfully reorganize and BlockFi need only show the prospect or possibility of success and need not prove the same with certainty. *See In re LTL Mgmt., LLC*, 638 B.R. 291, 320 (Bankr. D.N.J. 2022) (quoting *In re Union Trust Phila., LLC*, 460 B.R. at 660 and citing *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 724 F.3d 377 (3d Cir. 2013) (Jordan, J., dissenting) rev'd and remanded sub nom. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) (collecting cases)); *see also In re G-I Holdings Inc.*, 420 B.R. 216, 281 (Bankr. D.N.J. 2009) (evaluating the "reasonable likelihood of a successful plan of reorganization"). BlockFi just initiated the Chapter 11 Cases to reorganize its business for the

benefit of all of its creditors and to emerge as a viable going concern.  BlockFi submits, therefore, that this factor is satisfied.  *See In re DBMP*, No. 20-30080, Adv. No. 20-03004, 2021 WL 3552350, at *39 (Bankr. W.D.N.C. Aug. 10, 2021) (explaining that courts have "consistently recognize[d] that satisfying this factor does not set a high bar") (citations omitted); *see also In re Bestwall*, 606 B.R. 243, 254 (Bankr. W.D.N.C. 2019).

        2. *<u>The Debtor Will be Irreparably Harmed Unless the Court Issues the Injunction.</u>*

    39. Whether irreparable harm exists depends on whether the lack of an injunction "'could interfere with the reorganization of the debtor' or 'would interfere with, deplete or adversely affect property of [the] estates or which would frustrate the statutory scheme of chapter 11 or diminish [the debtor's] ability to formulate a plan of reorganization.'" *In re W.R. Grace & Co.*, 115 F. App'x 565, 570 (3d Cir. 2004) (citations omitted).  Indeed, the Court has recently clarified that "the mere risk of a potentially adverse impact on a debtor's bankruptcy can be sufficient to support a preliminary injunction" and the "plaintiff's theory that the debtor would not suffer an adverse impact should not be tested at the debtor's peril."  *LTL Mgmt., LLC v. San Diego Cty. Emps. Ret. Ass'n (In re LTL Mgmt., LLC)*, 640 B.R. 322, 337 (Bankr. D.N.J. 2022).

    40. Here, the Collateral is a valuable asset of the BlockFi bankruptcy estates.  Moreover, the lack of control over and ability to access and/or use the Collateral will interfere with BlockFi's reorganization, thereby frustrating the purpose of chapter 11, and diminish BlockFi's ability to formulate a plan of reorganization.  Accordingly, if the Collateral is not promptly delivered to BlockFi or alternatively subjected to a neutral party's control, BlockFi will be irreparably harmed.

### 3. *The Balance of Harms Weighs Heavily in Favor of this Court's Issuing of the Preliminary Injunction.*

41.     The balance of the harms weighs heavily in favor of an injunction.  The Debtors need the Collateral to support their reorganization and formulate a plan of reorganization.  By contrast, Emergent absolutely, unconditionally, and irrevocably guaranteed the payment obligations of the borrower under the Forbearance Agreement.  Accordingly, the only real question from Emergent's perspective is the timing of the delivery of the Collateral to BlockFi.  Neither of the Defendants will be harmed by the relief sought in the Motion because such relief would merely preserve the Collateral pending the final resolution of the Adversary Proceeding.  Accordingly, BlockFi will be prejudiced if the if the Collateral is not held pending further order from this Court in the Adversary Proceeding.

### 4. *The Public Interest Supports this Court's Issuing an Injunction.*

42.     The public interest also favors an injunction.  "In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests," *In re Integrated Health Servs., Inc.*, 281 B.R. 231, 239 (D. Del. 2002), and injunctive relief here would do so.  *See also, e.g.*, *In re Saxby's Coffee Worldwide, LLC*, 440 B.R. 369, 383 (Bankr. E.D. Pa. 2009) ("To the extent that the injunction is necessary to and will foster the Debtor's reorganization it serves 'one of the most important public interests.'" (quoting *In re Integrated Health Servs., Inc.*, 281 B.R. 231, 239 (Bankr. D. Del. 2002)).  Enjoining the Defendants from transferring the Collateral will support a uniform, timely and equitable resolution and is in the public interest.

## VI.    CONCLUSION

43.     For all of the reasons described above, the Debtor respectfully requests the entry of an order (i) (a) directing the Defendants to transfer the Collateral to a neutral broker or escrow under the Court's supervision or (b) alternatively, enjoining the transfer or use of the Collateral

pending the resolution of this Adversary Proceeding and (ii) granting such other and further relief, at law or equity, to which BlockFi may be entitled.

Dated: November 28, 2022                               /s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
(201) 489-1536 Facsimile
msirota@coleschotz.com
wusatine@coleschotz.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Richard D. Anigian, Esq. (*pro hac vice* pending)
Charles M. Jones II, Esq. (*pro hac vice* pending)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
rick.anigian@haynesboone.com
charlie.jones@haynesboone.com

*Proposed Attorneys for Debtors and
Debtors in Possession*